UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

MARC KELLER and MARNELL KELLER,
husband and wife,

      Plaintiffs,

                              CASE NO.:

-vs-

EXETER FINANCE CORP.,

      Defendant.

_____/

## COMPLAINT

COME NOW Plaintiffs, MARC KELLER and MARNELL KELLER, husband and wife,

by and through the undersigned counsel, and sue Defendant, EXETER FINANCE CORP., and in

support thereof respectfully allege violations of the Telephone Consumer Protection Act, 47

U.S.C. §227 *et seq.* ("TCPA") and the Florida Consumer Collection Practices Act, Fla. Stat.

§559.55 *et seq.* ("FCCPA").

## INTRODUCTION

1.      The TCPA was enacted to prevent companies like EXETER FINANCE CORP.,

from invading American citizen's privacy and to prevent abusive "robo-calls."

2.      "The TCPA is designed to protect individual consumers from receiving intrusive

and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

3.      "Senator Hollings, the TCPA's sponsor, described these calls as 'the *1256

scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at

night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone

out of the wall." 137 Cong. Rec. 30, 821 (1991).  Senator Hollings presumably intended to give

telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

4.    "No one can deny the legitimacy of the state's goal: Preventing the phone (at home or in one's pocket) from frequently ringing with unwanted calls. Every call uses some of the phone owner's time and mental energy, both of which are precious. Most members of the public want to limit calls, especially cellphone calls, to family and acquaintances, and to get their political information (not to mention their advertisements) [*6] in other ways." *Patriotic Veterans v. Zoeller*, No. 16-2059, 2017 U.S. App. LEXIS 47, at *5-6 (7th Cir. Jan 3, 2017).

5.    According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones*, Federal Communications Commission, (May 27, 2015), https://apps.fcc.gov/edocs_public/attachmatch/DOC-333676A1.pdf.

## JURISDICTION AND VENUE

6.    Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

7.    Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

2

8.      The alleged violations described herein occurred in Lee County, Florida. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2), as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

9.      Plaintiffs, MARK KELLER and MARNELL KELLER, are natural persons over the age of eighteen (18), who reside in Fort Myers, Lee County, Florida.

10.     Plaintiff MARK KELLER is the "called party" with respect to the calls placed to his cellular telephone number, (239) ***-3170, as further described herein. See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

11.     Plaintiff MARNELL KELLER is the "called party" with respect to the calls placed to her cellular telephone number, (239) ***-4408, as further described herein. See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

12.     Plaintiffs are debtors and/or alleged debtors as that term is defined by Florida Statute § 559.55(8).

13.     Defendant is a "creditor" as defined by Florida Statute § 559.55(5).

14.     Defendant is a corporation which was formed in Texas with its principal place of business located at 222 W. Las Colinas Blvd., Suite 1800, Irving, TX 75039 and which conducts business in the State of Florida through its registered agent, Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

15.     The debt that is the subject matter of this complaint is a "consumer debt" as defined by Florida Statute §559.55(6).

16.     Plaintiff MARK KELLER is the regular user and carrier of the cellular telephone number at issue, (239) ***-3170, and was the called party and recipient of Defendant's hereinafter described calls.

17.     Plaintiff MARNELL KELLER is the regular user and carrier of the cellular telephone number at issue, (239) ***-4408, and was the called party and recipient of Defendant's hereinafter described calls.

18.     In or about June of 2014, Plaintiffs began receiving telephone call to their respective aforementioned cellular telephone numbers from Defendant seeking to recover an alleged debt.

19.     Upon receipt of the calls from Defendant, Plaintiffs' caller identification labeled the calls were being initiated from, but not limited to, the following phone numbers: (800) 321-9637 and (877) 633-4714; and when those numbers are called, a pre-recorded message answers "Thank you for calling Exeter Finance Corp. To continue English, press 1, para Español, oprima el dos."

20.     Upon information and belief, some or all of the calls the Defendant made to the Plaintiffs' cellular telephone numbers were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiffs will testify that they knew it was an autodialer because of the vast number of calls they received and because when they answered a call from the Defendant, the

line would be open and nobody would answer, or there would be a long pause before a live person would come on the line.

21.    None of Defendant's telephone calls placed to Plaintiffs were for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

22.    In or about July of 2014, Plaintiff MARK KELLER answered a call from Defendant to his aforementioned cellular telephone number, met with an automated message, held the line and was eventually connected to a live representative, and informed an agent/representative of Defendant that the calls to his cellular phone were harassing, and demanded that they cease calling his aforementioned cellular telephone number.

23.    During the aforementioned phone call with Defendant in or about July of 2014, Plaintiff MARK KELLER unequivocally revoked any express consent Defendant had for placement of telephone calls to his aforementioned cellular telephone number by the use of an automatic telephone dialing system or a pre-recorded or artificial voice.

24.    Each subsequent call the Defendant made to the Plaintiff MARK KELLER's aforementioned cellular telephone number was done so without the "express consent" of the Plaintiff MARK KELLER.

25.    Each call the Defendant made to the Plaintiff MARK KELLER's aforementioned cellular telephone number was knowing and willful.

26.    Additionally, in or about September of 2015, due to continued automated calls to his aforementioned cellular telephone number from the Defendant, Plaintiff MARK KELLER again answered a call from Defendant, met with an automated message, held the line and was eventually connected to a live representative, and informed the agent/representative of Defendant

that he had previously informed them not to call his cellular phone, and again demanded that Defendant cease placing calls to his aforementioned cellular telephone number.

27.     Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abuse, calling the Plaintiff MARK KELLER despite the Plaintiff MARK KELLER revoking any express consent the Defendant may have had to call his aforementioned cellular telephone number.

28.     In or about December of 2014, Plaintiff MARNELL KELLER answered a call from Defendant to her aforementioned cellular telephone number, met with an automated message, held the line and was eventually connected to a live representative, and informed an agent/representative of Defendant that the calls to her cellular phone were harassing, and demanded that they cease calling his aforementioned cellular telephone number.

29.     During the aforementioned phone call with Defendant in or about December of 2014, Plaintiff MARNELL KELLER unequivocally revoked any express consent Defendant had for placement of telephone calls to her aforementioned cellular telephone number by the use of an automatic telephone dialing system or a pre-recorded or artificial voice.

30.     Each subsequent call the Defendant made to the Plaintiff MARNELL KELLER's aforementioned cellular telephone number was done so without the "express consent" of the Plaintiff MARNELL KELLER.

31.     Each call the Defendant made to the Plaintiff MARNELL KELLER's aforementioned cellular telephone number was knowing and willful.

32.     On at least three (3) separate occasions, Plaintiff MARNELL KELLER has answered a call from Defendant, held the line to be connected to a live representative, and demanded that Defendant cease placing calls to her aforementioned cellular telephone number.

33.    Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abuse, calling the Plaintiff MARNELL KELLER despite the Plaintiff MARNELL KELLER revoking any express consent the Defendant may have had to call her aforementioned cellular telephone number.

34.    The Plaintiffs' requests for the harassment to end were ignored.

35.    From approximately June of 2014 through the end of February of 2016, or at such time as will be determined after a thorough review of Defendant's records, Defendant has called the Plaintiffs' respective aforementioned cellular telephone numbers on a daily basis, despite the Plaintiffs' repeated requests for the calls to stop.

36.    From approximately June of 2014 through the end of February of 2016, or at such time as will be determined after a thorough review of Defendant's records, Defendant has placed approximately one-thousand (1,000) calls to Plaintiff MARK KELLER's aforementioned cellular telephone number.

37.    From approximately June of 2014 through the end of February of 2016, or at such time as will be determined after a thorough review of Defendant's records, Defendant has placed approximately five-hundred (500) calls to Plaintiff MARNELL KELLER's aforementioned cellular telephone number.

38.    Defendant intentionally harassed and abused the Plaintiffs on numerous occasions by calling several times in the same hour, during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

39.    Defendant attempted to collect a debt from the Plaintiffs by this campaign of telephone calls.

40.    Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to call individuals, just as it did to the Plaintiffs' respective cellular telephone numbers in this case.

41.    Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice, just as it did to the Plaintiffs' respective cellular telephone numbers in this case, with no way for the consumer, or Defendant, to remove the number.

42.    Defendant's corporate policy is structured as to continue to call individuals like the Plaintiffs, despite these individuals informing the Defendant that they do not wish to be called.

43.    Defendant has had numerous complaints from consumers against them across the country asking not to be called; however, the Defendant continues to call the consumers.

44.    Defendant has numerous other federal lawsuits pending against them alleging similar violations as stated in this Complaint.

45.    Defendant willfully and/or knowingly violated the TCPA with respect to the Plaintiff.

46.    From each and every call placed without express consent by Defendant to the Plaintiffs' respective cellular telephone numbers, the Plaintiffs suffered the injury of invasion of privacy and the intrusion upon their right of seclusion.

47.    From each and every call without express consent placed by Defendant to Plaintiffs' respective cellular telephone numbers, the Plaintiffs suffered the injury of the occupation of their cellular telephone line and cellular phone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from Defendant's call.

48.     From each and every call placed without express consent by Defendant to the Plaintiffs' respective cellular telephone numbers, the Plaintiffs suffered the injury of unnecessary expenditure of their time. The Plaintiffs had to waste time to deal with missed call notifications and call logs that reflect the unwanted calls. This also impaired the usefulness of these features of the Plaintiffs' cellular phones, which are designed to inform the user of important missed communications.

49.     Each and every call placed without express consent by Defendant to the Plaintiffs' respective cellular telephone numbers were an injury in the form of a nuisance and annoyance to the Plaintiffs. For calls that were answered, the Plaintiffs had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiffs had to deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of the Plaintiffs' cellular phones, which are designed to inform the user of important missed communications.

50.     Each and every call placed without express consent by Defendant to the Plaintiffs' respective cellular telephone numbers resulted in the injury of unnecessary expenditure of the Plaintiffs' cell phone's battery power.

51.     Each and every call placed without express consent by Defendant to the Plaintiffs' cell phone resulted in the injury of a trespass to the Plaintiffs' chattel, namely their respective cellular phones and their cellular phone services.

52.     As a result of the calls described above, Plaintiff MARC KELLER suffered an invasion of privacy. Plaintiff was also affect in a personal and individualized way by stress, anxiety, nervousness, embarrassment, distress and aggravation.

53.     As a result of the calls described above, Plaintiff MARNELL KELLER suffered an invasion of privacy. Plaintiff was also affect in a personal and individualized way by stress, anxiety, nervousness, embarrassment, distress and aggravation.

## COUNT I
### (Violation of the TCPA)

54.     Plaintiffs fully incorporate and reallege paragraphs one (1) through fifty-three (53) as if fully set forth herein.

55.     Defendant willfully violated the TCPA with respect to Plaintiff MARK KELLER, especially for each of the auto-dialer calls made to Plaintiff MARK KELLER's cellular telephone after Plaintiff MARK KELLER notified Defendant that he wished for the calls to stop.

56.     Defendant willfully violated the TCPA with respect to Plaintiff MARNELL KELLER, especially for each of the auto-dialer calls made to Plaintiff MARNELL KELLER's cellular telephone after Plaintiff MARNELL KELLER notified Defendant that she wished for the calls to stop.

57.     Defendant repeatedly placed non-emergency telephone calls to Plaintiff MARK KELLER's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff MARK  KELLER's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

58.     Defendant repeatedly placed non-emergency telephone calls to Plaintiff MARNELL KELLER's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff MARNELL KELLER's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiffs MARK KELLER and MARNELL KELLER, husband and wife, respectfully demand a trial by jury on all issues so triable and judgment against Defendant

EXETER FINANCE CORP. for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

**COUNT II**
**(Violation of the FCCPA)**

59.     Plaintiffs fully incorporate and reallege paragraphs one (1) through fifty-three (53) as if fully set forth herein.

60.     At all times relevant to this action, Defendant is subject to and must abide by the laws of the State of Florida, including Florida Statute § 559.72.

61.     Defendant has violated Florida Statute §559.72(7) by willfully communicating with the Plaintiffs, alleged debtors or any member of her or his family with such frequency as can reasonably be expected to harass the alleged debtor or her or his family.

62.     Defendant has violated Florida Statute §559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the Plaintiffs, the alleged debtors or any member of her or his family.

63.     Defendant's actions have directly and proximately resulted in Plaintiffs' prior and continuous sustaining of damages as described by Florida Statute §559.77.

**WHEREFORE,** Plaintiffs MARK KELLER and MARNELL KELLER, husband and wife, respectfully demand a trial by jury on all issues so triable and judgment against Defendant EXETER FINANCE CORP. for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

s/*Octavio Gomez*
Octavio Gomez, Esquire
Florida Bar #:  0338620
Morgan & Morgan, Tampa,  P.A.
One Tampa City Center
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tele:  (813) 223-5505
Fax:  (813) 223-5402
tgomez@forthepeople.com
*Attorney for Plaintiff*